**BLAKE CONSTRUCTION CO.,
INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 481–87C.

United States Claims Court.

Dec. 8, 1989.

James M. Radnich, San Pedro, Cal., for plaintiff.

J. Andrew Jackson, with whom were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Mary Mitchelson, Asst. Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

OPINION

SMITH, Chief Judge.

This appeal from the contracting officer's denial of plaintiff's claim for an equitable adjustment comes before the court on the government's motion for summary judgment. For the reasons set forth below, the government's motion is granted.

FACTS [1]

Plaintiff Blake Construction Co., Inc. was the prime contractor under contract No. N862474–81–C–8799, awarded by the United States Navy on June 15, 1983. The contract required Blake to build the Main Hospital Complex at the Naval Regional Medical Center in San Diego, California, and was for a firm fixed price of $98,411,-000. The instant claim involves a dispute over the grading and excavating operations called for under the contract.

The contract specifications and drawings divided the job site into several numbered areas. The contract required Blake to fill Area 3, that is, to bring Area 3 up to grade. Blake was permitted to fill Area 3 with material excavated from other areas on the job site, but the contract contained no assurance that the earthwork would be balanced.[2]

Blake planned to use Area 4A as a "laydown" area, where it could store materials and equipment. However, at the time the contract was awarded, Area 4A contained approximately 40,000 cubic yards of dirt, which had been stockpiled from previous jobs with which Blake was not involved. Hence, in order to utilize Area 4A as a laydown area, the stockpile had to be removed. The stockpile was not depicted on any contract drawings, nor was it described in the contract specifications.

After beginning work, one of Blake's subcontractors indicated to Blake that it believed that there would be a shortage of fill material needed to complete the project.

1. The pleadings, motion papers, and the representations of counsel at oral argument reveal that there are no relevant facts in dispute.

2. Earthwork is balanced if the fill areas are equal in volume to the excavation areas. Thus, in a balanced job, the contractor is neither left with excess dirt to be removed from the job site, nor required to bring in fill material from off site.

Blake, in turn, indicated to the officer in charge of construction (OICC) in a July 22, 1983 letter that it believed that the fill material available on site would be approximately 60,000 to 80,000 cubic yards short of that needed to complete the earthwork requirements for the project. The OICC responded in an August 3, 1983 letter that it did not agree that there was a shortage of fill material.

Nevertheless, Blake proposed that it be granted a change order, to allow it to use the stockpile in Area 4A as fill in Area 3, and to compensate it for extra costs incurred in moving the stockpile. On October 3, 1983, Blake and the Navy executed modification P–000004 (modification 4), providing for the removal of approximately 32,000 cubic yards of excess dirt from Area 4A, to be used as backfill in Area 3. The contract price was increased by $42,000. On March 7, 1984, the Navy issued modification P–000011 (modification 11), for the removal of 7150 cubic yards of dirt from Area 4A; this modification did not specify the area to which the dirt was to be moved, but Blake used it as fill in Area 3. Modification 11 increased the contract price by $9164.

As the project neared completion, it became apparent that there was an excess of excavation material, which Blake removed from the site and dumped in the City of San Diego landfill. On October 22, 1986, Blake submitted a claim for $168,560 to the OICC, to compensate it for removing 39,-150 cubic yards of surplus excavation material from the site. Coincidentally, the amount of surplus material was equivalent to the amount of dirt moved from Area 4A to Area 3 under modifications 4 and 11. Had it not been for the stockpile at Area 4A at the inception of the contract, the earthwork would have been balanced.

On December 24, 1986, the OICC issued a final decision denying Blake's claim. On August 13, 1987, Blake filed the instant direct access suit under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1982), appealing the denial of its claim.

## DISCUSSION

Under RUSCC 56, summary judgment is appropriate where there is no genuine dispute of material fact and as a matter of law, the movant is entitled to judgment. The party opposing the motion must come forward with a showing that a genuine issue of material fact exists in order to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (construing Fed.R.Civ.P. 56). Here, Blake has failed to meet that burden.

Clause 3.5.2 of the contract provides in part:

Surplus earthwork materials or other soil material not required or suitable and approved for filling, backfilling, or embankment shall be removed from Government property.... Sound clean soil material that is free of trash and debris shall be wasted at the City of San Diego landfill.... It is estimated that this quantity will not exceed 100,000 cubic yards.

When it bid on the contract, Blake took into account, or should have taken into account, the possibility that there would be surplus excavation material at the end of the job, which Blake would be required to remove from site. Clause 3.5.2 places the risk that there will be up to 100,000 cubic yards of excess material on the contractor. The 39,150 cubic yard surplus at the Regional Medical Center site falls within the 100,000 cubic yard cushion of clause 3.5.2.

Blake's central argument is that the stockpile in Area 4A was not part of Blake's contract, and thus, is not within the ambit of clause 3.5.2. Blake asserts that "surplus," for purposes of clause 3.5.2, means only that excavation material generated by the Blake contract. Blake's position is clearly spelled out in its December 10, 1986 letter to the OICC:

The fact that our subcontractor was in error with regard to his belief early in the project that there would be a shortage of material rather than a surplus does not alter the contract requirements regarding this matter. In fact, the Navy correctly pointed out at that time that any claim of shortage was premature

based on the large amount of earthwork which remained to be completed.

The contract provides for up to 100,000 cubic yards of surplus earthwork materials to be removed from the site as a requirement of the *original* contract. However, the original contract quantities of earthwork were increased by approximately 40,000 cubic yards per [modifications 4 and 11]. The additional loading and hauling necessary to remove the dirt which now becomes surplus as a result of your change order instructions is clearly compensable as an addition to the contract.

(Emphasis in original).

Had modifications 4 and 11 been unilateral directives from the Navy to move the stockpile from Area 4A to Area 3, Blake's argument might be convincing. However, the two modifications were bilateral, negotiated changes to the underlying contract. Blake knew when it was negotiating the modifications that it was required to fill Area 3, and by accepting the modifications, it took the risk that at the end of the job, there might be surplus material.

The fact that Blake moved the 7150 cubic yards of dirt specified in modification 11 to Area 3, even though that modification did not state where the dirt was to be put, further weakens Blake's position. It is inconsistent for Blake to argue that it was free to use 7150 cubic yards of stockpiled material that were not part of the contract to help it meet its obligation under the contract (*i.e.*, filling Area 3), but at the same time, it should not have been required to use the 32,000 cubic yards specified in modification 4, which also were not part of the contract, as fill for Area 3.

Blake maintains that the Navy's agreement to the two modifications constitutes an implicit admission that the stockpile in Area 4A was not part of the original contract. Whether the stockpile in Area 4A is considered part of the original contract, however, is not dispositive. The 32,000 cubic yards of stockpiled material specified in modification 4 became part of the contract when modification 4 was issued. The 7150 cubic yards of material specified in modification 11 became part of the contract once Blake deposited them in Area 3. Neither modification eliminated the effect of clause 3.5.2, which placed on Blake the risk that the earthwork would be unbalanced by up to 100,000 cubic yards.

When Blake agreed to modifications 4 and 11, it made a calculated business judgment. If there had been a shortage of fill at Area 3, as Blake thought there would be, Blake would have obtained the fill, with extra compensation, from within the site; furthermore, Blake would not have been required to expend any funds hauling excess material off site. As it turned out, Blake's assumption regarding the shortage of fill at Area 3 was wrong, as the Navy had indicated all along. Plaintiff should not now be allowed to rewrite the bargain it made.

CONCLUSION

Blake has failed to raise a genuine issue of material fact sufficient to defeat the government's motion for summary judgment. When Blake agreed to modification 4, and when it used the dirt under modification 11 as fill for Area 3, it took the risk that at the end of the job, there might be surplus material. The government's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment accordingly.